1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

ROBERT RICHARD CENTONI,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration, [1]

Defendant.

CASE NO. 12-cv-05463 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

16

17

18

19

20

21

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos.

14, 15, 17).

22

23

24

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

1    The failure of the ALJ to account for the functional limitations expressed by

2  treating and examining doctors required the ALJ to provide specific and legitimate

3  reasons for failing to credit fully their opinions.  Given the severity of the functional

4  limitations expressed by those doctors, and the significant difference between their

5  assessment and the ALJ's assessment, the ALJ's error is not harmless.  Therefore, the

6  Court concludes that this matter is **REVERSED** and **REMANDED** pursuant to sentence

7  four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

8
                                         BACKGROUND
9
10    Plaintiff, ROBERT RICHARD CENTONI, was born in 1961 (Tr. 131) and was 47

11  years old on his alleged date of disability onset of July 1, 2008 (*see id.*). Plaintiff received

12  his high school degree from a high school completion program at Tacoma Community

13  College (Tr. 40).  He has past relevant work experience as a dishwasher (Tr. 43, 158), as

14  a laborer on a production line at a wax plant (Tr. 41), as a driver for a flower shop and as

15  a dishwasher/cook at a restaurant/church/daycare (Tr. 158).

16    Plaintiff has at least the following severe impairments:  anxiety disorder: affective

17  disorder; substance abuse disorder in alleged remission; and narcissistic personality

18  disorder (20 CFR 404.1520(c) and 416.920(c)) (Tr. 25).

19    At the time of the hearing, plaintiff was living with his girlfriend in a small house,

20  sharing chores (Tr. 42-43).

21
                                    PROCEDURAL HISTORY
22
    Plaintiff filed an application for disability insurance benefits pursuant to 42 U.S.C.
23
24  § 423, (Title II) (Tr. 138-42), and Supplemental Security Income benefits pursuant to 42

1   U.S.C. § 1382(a), (Title XVI) (Tr. 131-37), of the Social Security Act. His applications

2   were denied initially and following reconsideration in February and June of 2009

3   respectively (Tr. 57-60, 61-66, 68-69). Plaintiff's requested hearing was held before

4   Administrative Law Judge Verrell Dethloff ("the ALJ") on August 31, 2010 (Tr. 37-56).

5   On October 12, 2010, the ALJ issued a written decision in which he concluded that

6   plaintiff was not disabled pursuant to the Social Security Act (Tr. 19-36).

7       On April 12, 2012, the Appeals Council denied plaintiff's request for review,

8   making the written decision by the ALJ the final agency decision subject to judicial

9   review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

10  seeking judicial review of the ALJ's written decision (*see* ECF No. 1, 3). Defendant filed

11  the sealed administrative record regarding this matter ("Tr.") on September 18, 2012 (*see*

12  ECF Nos. 11, 12).

13

14      In his Opening Brief, plaintiff raises the following issues: (1) Whether or not the

15  ALJ erred when he failed to find that claimant had a severe impairment consisting of a

16  cognitive disorder at step 2 of the sequential evaluation process; (2) Whether or not the

17  ALJ should have had a medical expert at the hearing to testify regarding claimant's

18  mental health conditions; (3) Whether or not the ALJ failed to consider mental health

19  assessments that suggest greater functional limitations than found by the ALJ; and (4)

20  Whether or not the ALJ's credibility decision is substantiated in this record and/or is

21  based on faulty assumptions (*see* ECF No. 14, p. 1).

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 3

1                                    STANDARD OF REVIEW

2          Plaintiff bears the burden of proving disability within the meaning of the Social

3    Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

4    the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

5    172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

6    (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

7    disability as the "inability to engage in any substantial gainful activity" due to a physical

8    or mental impairment "which can be expected to result in death or which has lasted, or

9    can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

10   §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

11   impairments are of such severity that plaintiff is unable to do previous work, and cannot,

12   considering plaintiff's age, education, and work experience, engage in any other

13   substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

14   1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

15         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

16   denial of social security benefits if the ALJ's findings are based on legal error or not

17   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

18   1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19   1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20   such "'relevant evidence as a reasonable mind might accept as adequate to support a

21   conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

22   Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

1   389, 401 (1971). Regarding the question of whether or not substantial evidence supports

2   the findings by the ALJ, the Court should "'review the administrative record as a whole,

3   weighing both the evidence that supports and that which detracts from the ALJ's

4   conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

5   *Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently

6   whether or not "'the Commissioner's decision is (1) free of legal error and (2) is

7   supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

8   2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.

9   2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

10

11          According to the Ninth Circuit, "[l]ong-standing principles of administrative law

12   require us to review the ALJ's decision based on the reasoning and actual findings

13   offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

14   adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27

15   (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation

16   omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570

17   at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.

18   2006) ("we cannot affirm the decision of an agency on a ground that the agency did not

19   invoke in making its decision") (citations omitted). For example, "the ALJ, not the

20   district court, is required to provide specific reasons for rejecting lay testimony." *Stout,*

21   *supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

22   the context of social security appeals, legal errors committed by the ALJ may be

23   considered harmless where the error is irrelevant to the ultimate disability conclusion

24

1   when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

2   LEXIS 6570 at \*24-\*26, \*32-\*36, \*45-\*46; *see also* 28 U.S.C. § 2111; *Shinsheki v.*

3   *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

4

5                                      DISCUSSION

6   **(1)      Whether or not the ALJ erred when he failed to find at step 2 of the**

7            **sequential evaluation process that claimant had a severe impairment**

8            **consisting of a cognitive disorder.**

9       Clinical psychologist, Dr. Dana Harmon, Ph.D. examined plaintiff on October 15,

10  2008 and conducted a mental status examination (Tr. 208-16).  Dr. Harmon concluded

11  that plaintiff had an organic mental syndrome that causes marked memory defect for

12  recent events, severe impoverished, slowed, perseverative thinking, with confusion or

13  disorientation, and severe labile, shallow, or course affect and that this condition was

14  permanent (*see* Tr. 208, 211).  Dr. Harmon diagnosed cognitive disorder NOS [not

15  otherwise specified] and major depressive disorder, recurrent, severe (Tr. 209).  Dr.

16  Harmon concluded that these diagnoses resulted in the following functional limitations: a

17  marked inability to understand, remember and follow simple (1 or 2 step) instructions, a

18  marked inability to understand, remember and follow complex (more than 2 step)

19  instructions, a severe inability to learn new tasks, a severe inability to exercise judgment

20  and make decisions, and a marked inability to perform routine tasks (Tr. 210).

21      Although the ALJ concluded at Step 2 that plaintiff had several severe

22  impairments, the ALJ concluded that plaintiff did not have the severe impairment of a

23

24

1  cognitive disorder NOS (Tr. 25-26).  The ALJ discounted Dr. Harmon's conclusions

2  based on an opinion offered by a reviewing psychologist, Dr. Thomas Clifford, Ph.D.,

3  who did not find a cognitive disorder (Tr. 26 (*citing* Tr. 221-34)).  The ALJ found that

4  Dr. Clifford was able to review all of the medical evidence, which was not done by Dr.

5  Harmon (Tr. 26).

6          Plaintiff questions whether or not Dr. Clifford actually considered Dr. Harmon's

7  opinion because Dr. Clifford failed to address any of the functional limitations that Dr.

8  Harmon noted were marked and severe (ECF No. 14, p. 6).  Regardless, plaintiff

9  contends that plaintiff's cognitive disorder should have been listed as a severe limitation

10  at Step 2 because the limitations noted by Dr. Harmon were more than a "slight

11  abnormality" that affected plaintiff's ability to do basic work activities (*see id.,* pp. 4-6).

12

13          Defendant argues that because the ALJ resolved Step 2 in plaintiff's favor, it is

14  irrelevant that the ALJ failed to list this cognitive disorder (ECF No. 15, pp. 4-6).  The

15  important consideration, according to defendant, is whether or not the ALJ considered

16  these limitations and restrictions at Step 5 when determining plaintiff's residual

17  functional capacity ("RFC") (*id.* at p. 5-6).

18          There are several problems with defendant's argument.  First, the reviewing

19  doctor, Dr. Clifford, whom the ALJ relied on to support his finding of non severe

20  impairment, did *not* review all of the medical records, as asserted by the ALJ.  Second,

21  the ALJ failed to consider the functional limitations noted by Dr. Harmon when

22  evaluating plaintiff's RFC.

23

24

1       Step-two of the administration's evaluation process requires the ALJ to determine

2   whether or not the claimant "has a medically severe impairment or combination of

3   impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);

4   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The ALJ "must consider the

5   combined effect of all of the claimant's impairments on [his] ability to function, without

6   regard to whether each alone was sufficiently severe." *Smolen, supra*, 80 F.3d at 1290

7   (citations omitted).

8       An impairment is "not severe" if it does not "significantly limit" the ability to

9   conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work

10  activities are "abilities and aptitudes necessary to do most jobs," including, for example,

11  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

12  capacities for seeing, hearing and speaking; understanding, carrying out, and

13  remembering simple instructions; use of judgment; responding appropriately to

14  supervision, co-workers and usual work situations; and dealing with changes in a routine

15  work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments

16  can be found 'not severe' only if the evidence establishes a slight abnormality that has

17  'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80

18  F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting*

19  Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening

20  device to dispose of groundless claims." *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v.*

21  *Yuckert*, 482 U.S. 137, 153-54 (1987)).

22

23

24

1    Here, Dr. Harmon's conclusions regarding plaintiff's limitations related to his

2   cognitive disorder were more than *de minimis*.  Therefore, according to Social Security

3   Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires

4   a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the

5   objective medical evidence and any impairment-related symptoms), and an informed

6   judgment about the limitations and restrictions the impairments(s) and related

7   symptom(s) impose on the individual's physical and mental ability to do basic work

8   activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also*

9   *Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). In

10  addition, the opinions of Dr. Harmon reflect greater functional limitations than assessed

11  by the ALJ in his RFC.

12

13    According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity

14  assessment [RFC] by the ALJ "must always consider and address medical source

15  opinions. If the RFC assessment conflicts with an opinion from a medical source, the

16  adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR

17  LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law,

18  [n]evertheless, they constitute Social Security Administration interpretations of the

19  statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882

20  F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th

21  Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we

22

23  defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the

24

1  [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467

2  U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

3     Here, the ALJ did not provide a "careful evaluation of the medical findings that

4  describe the impairment(s)" and simply noted that he favored the reviewing

5  psychologist's opinion because Dr. Clifford looked at "all the medical records" (Tr. 26).

6  Most importantly, Dr. Clifford did *not* look at all the medical records.  Dr. Clifford did

7  his paper review eight months before treating psychologist, Dr. Rosario Archer, Ph.D.,

8  MHP, did his assessment of plaintiff (*compare* Tr. 221 *with* Tr. 272). Dr. Archer found

9  many of the same functional limitations that had been found by Dr. Harmon, although not

10  as severe (*compare* Tr. 210 *with* Tr. 270).

11

12     Also, as Dr. Harmon is an examining psychologist and Dr. Clifford is a non-

13  examining, reviewing psychologist, Dr. Harmon's conclusions should be given more

14  weight.   An examining physician's opinion is "entitled to greater weight than the opinion

15  of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)

16  (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or

17  psychologist's opinion may not constitute substantial evidence by itself sufficient to

18  justify the rejection of an opinion by an examining physician or psychologist. *Lester,*

19  *supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial

20  evidence when it is consistent with other independent evidence in the record."

21  *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752).  "In

22  order to discount the opinion of an examining physician in favor of the opinion of a

23  nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that

24

1  are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d

2  1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. §

3  404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will

4  consider the length and extent of the treatment relationship). The ALJ "may reject the

5  opinion of a non-examining physician by reference to specific evidence in the medical

6  record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v.*

7  *Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041).

8
9          Here, the ALJ failed to provide any specific evidence in the medical record and,

10  instead, relied on the general, and inaccurate, observation that Dr. Clifford's opinion

11  should be favored because he reviewed all of the medical records, which he did not.

12  Therefore, this does not constitute substantial evidence by itself sufficient to justify the

13  rejection of an opinion by an examining psychologist.  *See Lester, supra*, 81 F.3d at 831.

14          Nor is this error harmless.  In the context of social security appeals, legal errors

15  committed by the ALJ may be considered harmless where the error is irrelevant to the

16  ultimate disability conclusion when considering the record as a whole. *Molina, supra*,

17  674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28

18  U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at

19  1054-55.  Defendant correctly points out that an ALJ must consider limitations and

20  restrictions imposed by all of a claimant's impairments, even those considered not

21  "severe"  (ECF No. 15, p. 5 (*citing* SSR 96-8p). Here, the ALJ failed to account for the

22  marked and severe limitations noted by Dr. Harmon when assessing plaintiff's RFC.

23

24

1   Since these limitations involved a number of things that may have affected the ALJ's

2   disability findings, this error is not harmless.

3          **(2)      Whether or not the ALJ should have had a medical expert at the**

4                     **hearing to testify if claimant's mental health conditions met or equaled**

5                     **a Listed Impairment.**

6          Although plaintiff argues that the ALJ should have had a medical expert at the

7   hearing to testify whether plaintiff's mental health conditions met or equaled a listed

8   impairment (ECF No. 14, pp. 1, 6-12), throughout plaintiff's extensive argument plaintiff

9   has cited no authority requiring the ALJ to do so.

10

11         Certainly, the ALJ "has an independent 'duty to fully and fairly develop the

12  record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v.*

13  *Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty is "especially important when

14  plaintiff suffers from a mental impairment." *Delorme v. Sullivan*, 924 F.2d 841, 849 (9th

15  Cir. 1991).

16         Nevertheless, plaintiff retains the burden to prove that he met or equaled the

17  criteria of a particular listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

18  Plaintiff's arguments center around his position that the ALJ failed to evaluate properly

19  the medical evidence and failed to consider the updated medical opinion obtained after

20  the opinion was provided by the psychological consultant (ECF No. 14, p. 12). Although

21  the ALJ may not have been required to call on a medical expert in order to determine

22
23  whether or not plaintiff met or equaled a listing at Step 3, in light of the ambiguities in

24

1   the record set forth above, it may have been helpful for the ALJ to do so.  Nevertheless,

2   the ALJ's failure to call a medical expert at the hearing, in and of itself, is not error.

3   **(3)      Whether or not the ALJ failed to consider mental health assessments**

4   **that suggest greater functional limitations than found by the ALJ.**

5   As noted above, the ALJ failed to consider the greater functional limitations noted

6   by Dr. Harmon when evaluating plaintiff's RFC.  Additionally, plaintiff notes that the

7   ALJ failed to evaluate properly the opinions of treating psychologist, Dr. Rosario Archer,

8   Ph.D., who evaluated plaintiff on September 1, 2009 (Tr. 267-72) (*see* ECF No. 14, p.

9

10  13).  Dr. Archer concluded that plaintiff had marked impairments in his ability to:

11  exercise judgment and make decisions; relate appropriately to coworkers and supervisors;

12  interact appropriately in public contact; respond appropriately to and tolerate the

13  pressures and expectations of a normal work setting; and maintain appropriate behavior

14  in a work setting (*id*. at 270).  Dr. Archer also concluded that plaintiff had moderate

15  impairments in his ability to: understand, remember and follow simple and complex

16  instructions; learn new tasks; and care for self, including personal hygiene and

17  appearance (Tr. 270).

18  The only comment from the ALJ regarding Dr. Archer's limitations had to do with

19  an unrelated limitation that plaintiff would not be able to work in a setting which

20  confined him to sitting or standing longer than an hour (Tr. 31). The ALJ made no

21  mention of the mental nonexertional limitations opined by Dr. Archer (*id*.)

22

23  The ALJ must provide "clear and convincing" reasons for rejecting the

24  uncontradicted opinion of either a treating or examining physician or psychologist.

1  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

2  1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

3  a treating or examining physician's opinion is contradicted, that opinion "can only be

4  rejected for specific and legitimate reasons that are supported by substantial evidence in

5  the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

6  1043 (9th Cir. 1995)).

7  Defendant acknowledges that the ALJ did not comment on Dr. Archer's opinion

8  of plaintiff's mental limitations (ECF No. 15, p. 8), but argues that the ALJ's error was

9  harmless "considering the overall record."  Defendant argues that when plaintiff received

10  medications, it reduced his anxiety and depression (ECF No. 15, p. 9).  Therefore,

11  according to defendant, Dr. Archer's marked and severe limitations "merely reflected a

12  period when plaintiff had not yet obtained adequate treatment" (*id.* at p. 10.)

13

14  Plaintiff correctly points out that it is defendant, not the ALJ, who opines that

15  mental health intervention was likely to restore or substantially improve plaintiff's ability

16  to work (ECF No. 17, p. 5). Dr. Archer, certainly, did not share that opinion.  Instead, Dr.

17  Archer concluded that although plaintiff's condition could stabilize with medication and

18  individual therapy, "he may never be able to work for pay" (Tr. 271).

19  The ALJ is silent on this issue.  Depending on the record in an individual case, an

20  ALJ's failure to consider the opinion of a treating doctor requires crediting the opinion of

21  the treating doctor as true.  *See Lester*, *supra*, 81 F.3d at 834; *see also Hammock v.*

22  *Bowen*, 970 F.2d 498, 502 (9th Cir. 1989).

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 14

1    The Ninth Circuit has "adhered to the general principle that an ALJ's error is

2 harmless where it is 'inconsequential to the ultimate nondisability determination'"

3 *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Carmickle v. Comm'r of*

4 *Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008)) (*other citations omitted*). Here, in

5 light of the marked and severe limitations noted by Dr. Archer, and the ALJ's contrary

6 conclusions, it cannot be said that the ALJ's errors were harmless.

7
    **(4)      Whether or not the ALJ's credibility decision is substantiated in this**
8
    **record and based on faulty assumptions.**
9

10    In light of the errors regarding the ALJ's evaluation of the medical evidence noted

11 above, it is necessary that this matter be remanded to the ALJ for further consideration.

12 A determination of a claimant's credibility relies in part on the assessment of the medical

13 evidence. *See* 20 C.F.R. § 404.1529(c).  Since this matter must be remanded for further

14 consideration of the medical evidence, the ALJ's credibility determinations must be

15 reevaluated, as well.  Therefore, the Court will not address this last issue.

16    That being said, the Court makes the following observations regarding some of the

17 ALJ's credibility findings.

18    First, the ALJ stated "the evidence also suggests some disinterest following his

19 treatment regimen" (Tr. 30).  He notes in a footnote "it follows that failure to follow

20 treatment recommendations reflects on the credibility of impairments" (Tr. 31, n.7, *citing*

21
22 *Tonapetyan v.Halter,* 242 F.3d 1144, 1147-47 (9th Cir. 2009); *Kennelly v. Astrue,* 313

23 Fed. Appx. 977 (9th Cir. 2009)).

24

1    When mental illness is involved, it is not always logical to assume that a failure to

2  comply with prescribed treatment suggests a *willful* failure to comply. This is in part

3  because a person suffering from a mental illness may not realize that he needs his

4  medication, or he may not even realize that his "condition reflects a potentially serious

5  mental illness." *See Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is

6  a questionable practice to chastise one with a mental impairment for the exercise of poor

7  judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval, *Blankenship v. Bowen*,

8  874 F.2d 1116, 1124 (6th Cir. 1989)). When a person suffers from a mental illness and

9  the mentally ill person does not have the requisite insight into his or her condition, or

10  does not have the memory and focus to have the ability to take a medication three times a

11  day, this fact actually can indicate a greater severity of mental incapacity. *See Van*

12  *Nguyen, supra*, 100 F.3d at 1465; *see also Blankenship, supra*, 874 F.2d at 1124.

13    Additionally, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7,

14  "the adjudicator must not draw any inferences about an individual's symptoms and their

15  functional effects from a failure to seek or pursue regular medical treatment without first

16  considering any explanations that the individual may provide, or other information in the

17  case record, that may explain infrequent or irregular medical visits or failure to seek

18  medical treatment." SSR 96-7 1996 SSR LEXIS 4 at \*22; *see also Regennitter v. Comm'r*

19  *SSA,* 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained,

20  or inadequately explained failure to seek treatment can cast doubt on the sincerity of a

21  claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint

22

23

24

1   for lack of treatment when the record establishes that the claimant could not afford it")

2   (citations, ellipses and brackets omitted).

3        Here, there was evidence in the record that during times when plaintiff was not

4   receiving treatment, he was on welfare and did not have health benefits (Tr. 130, 256).

5   During some of these times, he was living in his car (Tr. 244).  Perhaps these financial

6   difficulties, coupled with his mental impairments, may have contributed to his failure to

7   receive treatment.  At least, the ALJ should consider these factors following remand. See

8   SSR 96-7 1996 SSR LEXIS 4 at *22.

9

10       Finally, the ALJ concluded that plaintiff was not credible because "his level of

11  functioning does not support his allegations of disability" (Tr. 31).  The ALJ noted that

12  plaintiff could handle activities of daily living, which included household chores, cooking

13  and controlling his finances (*id.*).  Regarding activities of daily living, the Ninth Circuit

14  "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

15  activities  . . . .  does not in any way detract from her credibility as to her overall

16  disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*,

17  260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for

18  using daily activities to form the basis of an adverse credibility determination: (1)

19  whether or not they contradict the claimant's other testimony and (2) whether or not the

20  activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495

21  F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ

22  "must make 'specific findings relating to the daily activities' and their transferability to

23  conclude that a claimant's daily activities warrant an adverse credibility determination.

24

1  *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

2  2005)).

3      Here, the ALJ did not relate plaintiff's abilities to perform activities of daily living

4  to plaintiff's ability to maintain gainful employment.  The ALJ should consider this

5  following remand.

6                                    CONCLUSION

7      Based on these reasons and the relevant record, the Court **ORDERS** that this

8  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

9  405(g) to the Commissioner for further consideration.

10

11      **JUDGMENT** should be for plaintiff and the case should be closed.

12      Dated this 1st day of April, 2013.

13

14                                    _____
                                      J. Richard Creatura

15                                    United States Magistrate Judge

16

17

18

19

20

21

22

23

24